# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARY ANN R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 C 1368 |
| | ) | |
| ANDREW M. SAUL, | ) | Magistrate Judge Finnegan |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Mary Ann R. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record, the Court now grants the Commissioner's motion and denies Plaintiff's motion.

## BACKGROUND

Plaintiff applied for DIB on February 4, 2012, alleging disability since September 1, 2007 due to inflammatory rheumatoid arthritis. (R. 154, 175). Born in August 1964, Plaintiff was 47 years old at the time of the application and was considered a younger individual through her date last insured ("DLI"), June 30, 2013. (R. 154). She lives with her husband and children and attended one semester of college after graduating from high school. (R. 36). Between June 1989 and July 2007 Plaintiff worked as a bank teller and in related positions. (R. 37-40, 176). She quit on July 20, 2007 to care for her youngest child. (R. 40, 175). A couple of years later, Plaintiff fell ill with fatigue and

constant pain. She tried to work in data entry in August 2010, and performed some intermittent, part-time service as a teacher's aide from August 2009 to June 2011, but she was unable to sustain employment due to joint and body pain. (R. 40-41, 200). None of Plaintiff's work after July 2007 constituted substantial gainful activity. (R. 612).

The Social Security Administration denied Plaintiff's application at all levels of review, and she appealed to the district court. On October 20, 2015, this Court reversed and remanded the case to the Commissioner for further proceedings. Though the decision from administrative law judge Jose Anglada (the "ALJ") was largely supported by substantial evidence, the Court found that he had erred in giving significant weight to the opinion of State agency reviewer Vidya Madala, M.D., without addressing the fact that Dr. Madala evaluated the medical evidence as if Plaintiff had been diagnosed with osteoarthritis when she had actually been diagnosed with seronegative rheumatoid arthritis. (R. 729-60); *Reyes v. Colvin*, No. 14 C 7359, 2015 WL 6164953 (N.D. Ill. Oct. 20, 2015). On January 7, 2016, the Appeals Council vacated the final decision of the Commissioner and remanded the case "for further proceedings consistent with the order of the court." (R. 767). The ALJ was instructed to "offer [Plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (*Id.*).

To assist in reevaluating Plaintiff's case, the ALJ asked Bernard Gussoff, M.D., an independent medical expert, to provide a Medical Source Statement of Ability to Do Work-Related Activities and answer written interrogatories regarding Plaintiff's impairments. (R. 1097-1105). Dr. Gussoff submitted written responses on February 21, 2016 and the ALJ made them part of the record without objection. The ALJ also held a new hearing on

2

December 12, 2016, and heard testimony from Plaintiff, who appeared with counsel, and from vocational expert Sara Elizabeth Gibson, M.A., (the "VE"). (R. 633-94). On January 13, 2017, the ALJ found that Plaintiff's polyarthritis/rheumatoid arthritis and fibromyalgia are severe impairments, but they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 612-13). After reviewing the medical and testimonial evidence in detail, the ALJ concluded that Plaintiff was not disabled at any time from her September 1, 2007 alleged onset date through her June 30, 2013 DLI because she retained the residual functional capacity ("RFC") to perform a significant number of light jobs available in the national economy, including packer, assembler, and sorter. (R. 613-25). The Appeals Council did not assume jurisdiction, 20 C.F.R. § 404.984, and Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

Plaintiff's arguments in support of reversing or remanding the case are best described as skeletal and undeveloped. From what the Court can gather, it appears Plaintiff believes the ALJ: (1) made a flawed RFC determination; (2) relied on faulty VE testimony in finding her capable of working as a packer, assembler, and sorter; and (3) failed to properly weigh Dr. Gussoff's opinion. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence and there are no errors warranting reversal or remand.

## **DISCUSSION**

**A.  Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA"). In reviewing this decision, the court may

3

not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.    Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that she is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if she is unable to perform

4

"any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [s]he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.  Analysis**

    **1.  RFC**

Plaintiff first argues that the case must be reversed or remanded based on her general belief that she simply is not capable of working due to severe body pain and fatigue. The Court construes this as an objection to the RFC. A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, at *1-2. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

5

The ALJ found Plaintiff capable of performing light work with the following restrictions: occasional lifting of 20 pounds; frequent lifting of 10 pounds; sitting, standing, and walking for 6 hours in an 8-hour workday with normal rest periods; no working at heights, climbing ladders, or frequently negotiating stairs; occasional crouching, kneeling, and crawling; frequent (but not constant) handling and fingering; and no operation of moving or dangerous machinery. (R. 613). In support of this RFC, the ALJ provided a thorough discussion of the medical records, diagnoses, and findings from Plaintiff's treating rheumatologists (Manjari Malkani, M.D., Harpinder Ajmani, M.D., Monica M. Aloman, M.D., and Paul R. Delbusto) from March 2007 through December 2015. The ALJ also considered Plaintiff's testimony, imaging test results, and medications, as well as all medical opinions. (R. 614-21).

Plaintiff does not address any of this evidence or identify specific records that indicate she is incapable of working. Instead, she claims that "[t]o repeat the entire medical record history would be lengthy and cumbersome to say the least" and so she "implores the Defendant [and, by extension, this Court] to review the records and [he] will see that the Plaintiff is suffering from fibromyalgia and crippling arthritis." (Doc. 13, at 4; Doc. 22, at 5). This Court is under no obligation to scour through the more than 1100-page record to try and find treatment notes that potentially support Plaintiff's disability claim. (R. 243-66, 272-82, 916-89). The Seventh Circuit has "cautioned time and again [that] '[j]udges are not like pigs, hunting for truffles buried in [the record].'" *Friend v. Valley View Comm. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *Britney S. v. Berryhill*, 366 F. Supp. 3d 1022, 1027-28 (N.D. Ill. 2019).

6

As for the minimal evidence Plaintiff does cite, it fails to demonstrate that she is disabled or that the ALJ's RFC determination is flawed. Plaintiff notes that she has been diagnosed with fibromyalgia, rheumatoid arthritis, chronic body pain, insomnia, and Vitamin B deficiency, and that she had a positive rheumatoid factor test in August 2014. (Doc. 13, at 3-4) (citing generally Exhibits 2F, 4F, and 13F). The ALJ acknowledged all of these diagnoses and the cited test result, but they are not themselves evidence of Plaintiff's functioning. *Dianna K. v. Berryhill*, No. 1:17-CV-2568-TWP-MPB, 2018 WL 4560674, at *6 (S.D. Ind. Sept. 24, 2018) ("[P]ointing to a diagnosis alone is insufficient to establish the existence of functional limitations.").

In her reply brief, Plaintiff argues that the ALJ failed to properly weigh the March 19, 2012 opinion from treating rheumatologist Dr. Aloman. (Doc. 22, at 6). A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2); *see Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs

7

and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ.  20 C.F.R. § 404.1527(c)(2)-(6); see Simila, 573 F.3d at 515.

Dr. Aloman completed an Arthritic Report indicating that Plaintiff has had seronegative inflammatory arthritis since 2009 that causes pain, tenderness, stiffness, swelling, and fatigue.  (R. 240).  According to Dr. Aloman, Plaintiff is significantly limited in her ability to do repetitive overhead reaching, handling, and fingering, and she has difficulty grasping, turning, and twisting objects, holding utensils, combing her hair, turning a door knob, and buttoning.  (R. 241).  Dr. Aloman stated that Plaintiff has no ambulatory problems but can only sit or stand for 15 minutes at a time before needing to alternate positions for 15 minutes "secondary to back pain, knee pain."  (R. 241-42).  Though Dr. Aloman confirmed that Plaintiff does not need a cane, for some reason she opined that Plaintiff is unable to use the "unoccupied upper extremity" (i.e., the arm not holding a cane) for normal lifting/carrying of 10 pounds.  (R. 241).

The ALJ gave Dr. Aloman's opinion minimal weight because it was inconsistent with her own treatment notes showing no localized joint pain, joint tenderness, or swelling a month earlier on February 22, 2012.  (R. 621, R. 494-96).  It was also inconsistent with laboratory and clinical diagnostic testing results that were generally normal, mild, or intermittent.  (R. 621).  Plaintiff herself told Dr. Aloman on September 28, 2011 that she was not experiencing any pain or problems, and had no difficulty dressing, combing her hair, lifting a full cup or glass to her mouth, reaching overhead, opening pre-opened jars, cooking, running errands, vacuuming, and doing chores.  (R. 621, 499-500).  Furthermore, Mahesh Shah, M.D., conducted an Internal Medicine Consultative

8

Examination of Plaintiff on April 12, 2012 and found full range of motion in all joints, no inflammatory changes in the fingers, normal gait, normal handgrip and finger grasps, and normal fine and gross manipulations. (R. 270, 617-18, 621). Plaintiff does not address any of this evidence or explain how it supports a more restrictive RFC. Her perfunctory assertion that she is "completely baffled" by the ALJ's decision is insufficient to demonstrate that it is not supported by substantial evidence. (Doc. 22, at 6).

All that remains are Plaintiff's own statements that she is incapable of working due to pain and fatigue. The regulations describe a two-step process for evaluating a claimant's own description of her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The Court is to give the ALJ's assessment of a claimant's subjective symptom allegations "special deference and will overturn it only if it is patently wrong," i.e., if it "lacks any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). A reviewing court should rarely disturb a subjective symptom assessment, as it lacks "the

opportunity to observe the claimant testifying." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The claimant bears the burden of showing that an ALJ's subjective symptom evaluation is "patently wrong." *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018).

The ALJ discredited Plaintiff's statements because they were inconsistent with the objective evidence showing mostly normal exams and test results; they were inconsistent with Plaintiff's activities of daily living; there were large gaps in Plaintiff's treatment history; Plaintiff exhibited poor compliance with treatment; and Plaintiff stopped working in 2007 to care for her young child and not due to her impairments. (R. 614-20). There is nothing patently wrong about these findings. *See, e.g., Egly v. Berryhill*, 746 F. App'x 550, 555 (7th Cir. 2018) (affirming decision concerning the plaintiff's subjective statements where "the ALJ properly considered [the plaintiff's] activities in concluding that his testimony was exaggerated."); *Purifoy v. Colvin*, No. 13 C 6617, 2015 WL 2448281, at *8 (N.D. Ill. May 21, 2015) ("Without an alternative explanation for Plaintiff's failure to comply with medical advice, the ALJ did not err in concluding that her lack of follow through undermined her allegations of disability."). Notably, Plaintiff does not address this aspect of the ALJ's decision or identify specific errors he purportedly made in discounting her testimony. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments . . . are waived.").

Viewing the record as a whole, and given the cursory nature of Plaintiff's arguments, the Court finds no error in the ALJ's determination that Plaintiff has the ability to perform a restricted range of light work as set forth in the RFC. Plaintiff's motion for summary judgment on this basis is denied.

### 2. VE Testimony

Plaintiff argues that the case must still be reversed or remanded because the ALJ relied on flawed VE testimony in finding her capable of performing a significant number of jobs available in the national economy. Vocational experts are generally called to provide "an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). "Reliable testimony from a VE is sufficient to satisfy the substantial evidence standard at step five." *Iversen v. Berryhill*, No. 16 C 7337, 2017 WL 1848478, at *2 (N.D. Ill. May 8, 2017) (citing *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008)).

At the December 12, 2016 hearing, the VE testified that a person with Plaintiff's background and RFC could not perform her past work as a bank teller but she could still work as a packer, sorter, or assembler. At the ALJ's request, the VE provided *Dictionary of Occupational Titles* ("DOT") numbers for each position in question and confirmed that her testimony was consistent with the DOT. (R. 680-82). *See Weatherbee*, 649 F.3d at 569 (requiring the ALJ to ask whether the VE's testimony conflicts with the DOT and investigate and resolve apparent conflicts). The VE also stated that if Plaintiff would be absent more than 1.5 days per month, she would not be employable. (R. 682).

Plaintiff argues that the VE's testimony "does not make sense" because the packer, sorter, and assembler jobs are more physically demanding than the teller job. (Doc. 13, at 3). Plaintiff does not provide any support for this proposition beyond stating in conclusory fashion that "[a]ny person who has knowledge of what a packer, assembler or sorter does should not state that the Plaintiff's argument is unsupported conjecture."

(Doc. 22, at 6). Unlike Plaintiff, however, the VE is an expert in assessing job functionality and availability and she explained that the teller job was unavailable to Plaintiff solely because it required constant handling and fingering, whereas the packer, sorter, and assembler jobs require only frequent hand manipulation. (R. 680). Plaintiff ignores this testimony and offers no basis for questioning it. Plaintiff's bald assertion that the VE somehow "contradicted herself" is incorrect and so rejected. *Crespo*, 824 F.3d at 674.

Also unavailing is Plaintiff's objection that she cannot work as a packer, sorter, or assembler because she would be absent 1.5 days per month. According to Plaintiff, "pure old fashioned common sense" demonstrates that "[n]o employer would allow for an employee to be absent that many times from her job." (Doc. 13, at 4). Again, Plaintiff ignores the VE's testimony that an individual could not sustain competitive employment if she demonstrated "a pattern of absenteeism that *exceeds* one and a half or more days per month." (R. 682) (emphasis added). Plaintiff's unfounded belief that this is incorrect is insufficient to challenge the reliability of the VE's testimony, particularly since Plaintiff did not raise any such objections during the administrative hearing. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion[.]"). Notably, Plaintiff does not identify any physician who opined that she would actually miss work more than 1.5 days per month.

In sum, the ALJ did not commit reversible error in accepting the VE's testimony that Plaintiff is capable of working as a packer, sorter, or assembler. Plaintiff's request to remand the case for further analysis of that issue is denied.

### 3. Opinion Evidence

Plaintiff finally argues that the ALJ erred in giving some weight to the opinion from State agency consultant Dr. Bernard Gussoff because he "never saw or examined the Plaintiff." (Doc. 13, at 3). At the ALJ's request, Dr. Gussoff reviewed Plaintiff's entire case history and provided his assessment of her functional abilities. He concluded in February 2016 that Plaintiff is capable of light work with: frequent but not continuous hand manipulations; occasional balancing, stooping, and climbing of ramps and stairs; and no kneeling, crouching, crawling, or climbing ladders, ropes, and scaffolds. (R. 622, 1097, 1098, 1100). The ALJ found this aspect of Dr. Gussoff's opinion "well supported" by the medical and other evidence of record. (R. 622).

Plaintiff insists that "the non-treating physician, Dr. Gussoff should not be given as much weight as her treaters." (Doc. 22, at 7). The Seventh Circuit has held that an ALJ may rely on opinions from State agency physicians when they are consistent with the record. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation."); SSR 96-6p, 1996 WL 374180, at *4 ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."). Plaintiff does not identify any errors or inconsistencies in Dr. Gussoff's opinion that make it unreliable. Nor is there any concern that Dr. Gussoff's opinion is outdated since it is the most recent assessment in the record and based on all available evidence through February 21, 2016. *Cf. Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) ("ALJ erred by continuing to rely on an outdated assessment by a non-examining

physician."). The Court previously explained why the ALJ reasonably afforded minimal weight to Dr. Aloman's March 2012 opinion, and Plaintiff fails to point to any other opinion (from a treater or otherwise) that supports her disability claim.

On the record presented, Plaintiff's undeveloped argument that the ALJ erred in weighing Dr. Gussoff's opinion has no merit and does not support summary judgment in favor of Plaintiff.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment [13] is denied, and the Commissioner's Motion for Summary Judgment [20] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: September 24, 2019

_Sheila Finnegan_
SHEILA FINNEGAN
United States Magistrate Judge